925 P.2d 1075

**Steven GRISHAM, a single man; Laura Liesen, a single woman, Plaintiffs–Appellants,**

v.

**FIVE STAR INSURANCE COMPANY, a California corporation; Carnegie General Insurance Agency of Arizona, a Nevada corporation, Defendants–Appellees.**

No. 1 CA–CV 96–0033.

Court of Appeals of Arizona, Division 1, Department E.

Oct. 22, 1996.

Palmer Law Offices, P.C. by Adam P. Palmer, Phoenix, for Plaintiffs–Appellants.

Jones, Skelton & Hochuli by Donald L. Myles, Jr., Marc T. Steadman, Monica Beerling, Phoenix, for Defendants–Appellees.

## OPINION

GARBARINO, Judge.

Arizona Revised Statutes Annotated (A.R.S.) section 20–1632(A) (Supp.1995) states that a notice of cancellation shall be mailed to an insured "at least ten days prior to the effective date of such ... cancellation ... [and] shall include or be accompanied by all" of certain enumerated items, including a refund of unearned premium. Subsection B mandates that failure to comply with subsection A shall invalidate any cancellation. A.R.S. § 20–1632(B) (Supp.1995).

The insurer, Five Star Insurance Company (Five Star), canceled the automobile insurance of the insured, Steven Grisham (Grisham), before the occurrence of an accident for which Grisham now seeks coverage. The cancellation notice was mailed to Grisham on February 10, 1994. The premium refund check was not mailed to Grisham until March 22, 1994.

We hold that by failing to include or accompany the premium refund check with the cancellation notice, Five Star did not comply with the statutory requirements for canceling automobile insurance, and the cancellation was therefore invalid.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 8, 1994, Five Star received Grisham's application for automobile insurance. Grisham listed his address as "1840 West Emelita, Apt.2003, Mesa, Arizona 85203" (Mesa address). However, his driver's license and temporary registration, which accompanied the application, listed his address as "6320 West Windsor Blvd., Glendale, Arizona 85301" (Glendale address).

The Mesa address was a lower-rated territory than the Glendale address. Five Star issued Grisham a policy based on his residence at the Mesa address, but claims it requested that he provide proof of his residence at that address, and warned that it would cancel his policy if he did not provide the requested information. The policy provided coverage through July 27, 1994. Five Star contends that it never received proof of Grisham's address.

On February 10, 1994, Five Star sent a notice of cancellation by certified mail to Grisham at the Mesa address, indicating that his policy would be canceled as of March 4, 1994 at 12:01 a.m., and stating as its reason for cancellation that the requested address information was not provided. The cancellation notice was not accompanied by a premium refund check. Five Star also sent a copy of this notice to Grisham's insurance broker, Arizona Insurance Agency (AIA). On February 18, 1994, Five Star received the cancellation notice by return mail, which stated, "MOVED—LEFT NO FORWARDING ADDRESS." On March 22, 1994, Five Star mailed a premium refund check in the amount of $884 to Grisham at the Mesa address. Five Star received the premium refund check by return mail. Five Star remailed the refund check and it was not returned.

On July 3, 1994, Grisham was involved in an automobile accident while driving the vehicle covered under his Five Star policy. After his claim was processed, Grisham learned for the first time that his policy had been canceled on March 4, 1994, because his Agent, Carnegie General Insurance Agency of Arizona (Carnegie), had been unable to verify his address. Grisham had not received the notice of cancellation or premium refund check issued by Five Star. Five Star confirmed that the premium refund check had never been cashed.

Grisham filed this action against Five Star, AIA and Carnegie, seeking, among other things, a declaratory judgment that he had coverage under the Five Star policy at the time of his accident. Grisham filed a motion for partial summary judgment on his claim for declaratory relief, arguing that Five Star had failed to comply with the requirements for canceling automobile insurance set forth in A.R.S. section 20–1632(A), and that its

notice of cancellation was therefore ineffective. Specifically, Grisham contended that the statute required Five Star to mail the premium refund check with the notice of cancellation, and because Five Star did not issue Grisham's premium refund check until one month after it had issued the notice of cancellation, the notice of cancellation was invalid. Five Star filed a cross-motion for summary judgment on the same issue, contending that it did not have to mail the premium refund check contemporaneously with the notice of cancellation. Instead, it argued that the cancellation became effective ten days after all the statutorily-required documents had been sent to the insured.

The trial court granted summary judgment in Five Star's favor, holding in pertinent part:

> [T]he phrase "be accompanied by" does not require that the items and information mandated by § 20–1632(A) be mailed *simultaneously*. The court holds that the statute mandates that cancellation is not effective until ten days after all statutorily required information and items are mailed to the insured. Accordingly, [Grisham's] policy had been effectively canceled before July 3, 1994.

The court entered judgment to this effect, and Grisham timely filed this appeal. We have jurisdiction over this matter pursuant to A.R.S. section 12–2101(B) (1994).

### ISSUES

1. Did Five Star's failure to include or accompany the premium refund with the notice of cancellation violate the notice requirements of A.R.S. section 20–1632(A), and therefore invalidate its cancellation of Grisham's policy?

2. If the timing of the notice of cancellation and premium refund complied with the statutory requirements, has Grisham presented a question of fact as to whether the notice of cancellation was mailed via certified mail as required?

### DISCUSSION

*I. Standard of Review.*

██ In reviewing a grant of summary judgment, we view the evidence in the light most favorable to the party opposing the motion. *Hill–Shafer Partnership v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). We are not bound by the conclusions of law drawn by the trial court; rather, we review such questions *de novo. Tovrea Land and Cattle Co. v. Linsenmeyer,* 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966).

II. *To Effectively Cancel an Automobile Insurance Policy Under A.R.S. section 20–1632(A), an Insurer Must Include or Accompany the Refund of Any Unearned Premium with the Notice of Cancellation.*

██ Arizona Revised Statutes Annotated section 20–1632 sets forth the notice requirements insurers must follow when canceling, refusing to renew, or reducing a policyholder's limits of liability or coverage. The statute provides, in pertinent part:

> **A.** A notice by the insurer to the policyholder of non-renewal, cancellation or reduction in the limits of liability or coverage shall be mailed to the named insured by certified mail or United States post office certificate of mailing at least ten days prior to the effective date of such non-renewal, cancellation or reduction in limits of liability or coverage. Such notice *shall include or be accompanied by* all of the following:
>
> 1. A statement in writing of the specific facts which constitute the reasons, consistent with § 20–1631, for such action by the insurer and a notice indicating the named insured's right to complain to the director of the insurer's action within ten days after receipt of the notice by the insured.
>
> 2. Notice of the insured's possible eligibility for insurance through the automobile assigned risk plan, and the notice shall state that all information included in the notice is given pursuant to this article.
>
> 3. *A refund of unearned premium,* except a premium that has been financed.

A.R.S. § 20–1632(A) (emphasis added). Failure of the insurer to comply with this subsection invalidates any cancellation, non-renewal or reduction of limits of liability or coverage,

except a cancellation or non-renewal for non-payment of premium. A.R.S. § 20–1632(B); *Torrez v. State Farm Mut. Auto. Ins. Co.*, 130 Ariz. 223, 227, 635 P.2d 511, 515 (App. 1981).

■ The parties dispute the meaning of the phrase "be accompanied by" in the above statute. Grisham contends that this language mandates that the items enumerated under the statute, including the refund of unearned premium, be included in or sent simultaneously with the notice of cancellation. Five Star suggests that the statute does not require the contemporaneous mailing of the enumerated items with the notice; rather, it provides that cancellation will not be effective until ten days after all of the statutorily-required items have been mailed to the insured. Five Star acknowledges that it did not send Grisham the refund of his unearned premium until March 22, 1994, more than one month after it issued his notice of cancellation. However, under its interpretation of the statute, cancellation of coverage became effective ten days after the mailing of the premium refund, and coverage was therefore effectively canceled before Grisham's July 3, 1994 accident.

Grisham's interpretation of the statute is the proper one. In interpreting a statute, each word is to be given its ordinary meaning. *Torrez*, 130 Ariz. at 226, 635 P.2d at 514. To "accompany" is "to go with as an associate or companion." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986). This definition suggests that premium refunds are to be sent to the insured along with the notice of cancellation. Premium refunds are not to be delivered to the insured days, weeks, or months after the insured has received the notice of cancellation.

Five Star argues that this interpretation of the statute confers the same meaning on the phrase "be accompanied by" as the word "include" and thereby renders the phrase "be accompanied by" superfluous and violates the principle that meaning is to be given to each word in a statute. *See Torrez*, 130 Ariz. at 226, 635 P.2d at 514 ("In interpreting statutes, each word is to be given meaning."). We disagree.

The statute provides that the notice of cancellation "shall include or be accompanied by" several different items, including a statement of the reasons for the cancellation, notice of the insured's right to complain to the director about the insurer's action, notice of the insured's possible eligibility for insurance through the automobile assigned risk plan, and a refund of unearned premium. A.R.S. § 20–1632(A). An item is "included" in something if it is "part of" it or "contained" within it. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1986). Thus, an insurer may comply with the statute by either "including" the required items in the notice of cancellation itself, or by mailing those items at the same time as the notice of cancellation, thereby having them "accompany" the notice. *See Stephen and Stephen Properties, Inc. v. State Tax Comm'n*, 499 S.W.2d 798, 804–05 (Mo.1973) (interpreting statute which provided that administrative decisions "shall include or be accompanied by findings of fact and conclusion of law" to require that findings of fact and conclusions of law be made simultaneously with administrative decision, not months after decision had been issued).

Five Star argues that this interpretation of the statute is too restrictive and violates the public policy behind the statute, which is to provide the insured an opportunity to obtain other insurance through an assigned automobile risk plan, or by purchasing new insurance with their premium refund. Five Star suggests that the purpose of the statute is served as long as the cancellation is not effective until ten days after all of the required documents have been mailed to the insured. In support of this assertion, Five Star relies on *General Exchange Insurance Corporation v. Coffelt*, 192 Ark. 468, 92 S.W.2d 213 (1936). We find *General Exchange* factually distinguishable from this case.

In *General Exchange*, a policy provision mandated that the notice of cancellation include either the unearned premium refund or a statement that the unearned premium would be refunded upon demand. 92 S.W.2d at 213–14. In this case, we have the language of a statute mandating that the items required by the statute, including the premi-

um refund, must be included in the notice itself or accompany the notice when it is mailed to the insured. A.R.S. § 20–1632(A). Five Star's mailing of the premium refund to Grisham more than one month after it had issued Grisham a notice of cancellation did not comply with the statute.

■ Strict compliance with the notice provisions of the statute is required. *See Civil Serv. Employees Ins. Co. v. Rodriquez,* 25 Ariz.App. 534, 536, 544 P.2d 1135, 1137 (1976) ("We do not agree that all the statute requires is colorable compliance.... [S]trict compliance is required."). The statute specifically provides that "[f]ailure of the insurer to comply with subsection A shall invalidate any cancellation." A.R.S. § 20–1632(B).

## CONCLUSION

Five Star did not comply with the requirements of A.R.S. section 20–1632(A) when it attempted to cancel Grisham's insurance policy. Five Star was required to include a refund of unearned premium with the notice of cancellation or mail the refund at the same time as the notice of cancellation. A.R.S. § 20–1632(A). Its failure to do so invalidated its cancellation of Grisham's insurance policy. A.R.S. § 20–1632(B). Therefore, Grisham was covered under his Five Star policy at the time of his July 3, 1994 accident. In light of our resolution of this issue, we need not address Grisham's argument that he presented a question of fact regarding Five Star's compliance with the certified mailing requirements in issuing the notice of cancellation. We reverse the trial court's entry of summary judgment in favor of Five Star, and remand with directions to grant summary judgment in favor of Grisham on this issue.

TOCI and WEISBERG, JJ., concur.